REDMANN, Judge.
Defendant appeals from a judgment for $2,158 special and $22,500 general damages from a broken leg plaintiff suffered when 20 sheets of 4' X 8' wall paneling fell over on him.
We conclude that the evidence does not support a finding that defendant was negligent. We therefore reverse.
Defendant’s deliveryman had delivered the paneling to plaintiff’s home, standing it on its 8' side against the exposed wall studs in a 12' X 15' utility room that was being remodeled. (Plaintiff would not allow it to be laid flat on the floor because that would have presented a danger to his 77-year-old wife, and the deliveryman would not stand it on its 4' end, as plaintiff wanted, because that would have caused the paneling to bow.)
Over 24 hours after the delivery, during a night rain, plaintiff went into the utility room to cover the paneling with a plastic tablecloth to protect it from rain that might enter through some 15- to 18 — inch opening. Plaintiff says he merely threw the plastic covering on top of the paneling, without touching the paneling, and the paneling fell over on him.
Plaintiff testified that the paneling was placed “I guess about 15, 10 degrees, 15, 20 degrees [off vertical] up against that stud, pretty straight up there.” Defendant’s deliveryman, who insisted he knew from experience how to stack paneling, testified it was about 45° (sic). Plaintiff physically indicated the angle, and defense counsel estimated the indicated angle at 15 or 20°; plaintiff counsel remarked “If counsel wants to measure that angle or — ” when the trial judge interrupted “Fifteen degrees would be about laying down.” Whatever the number of degrees, all of the evidence is that there was some angle, and there is no evidence that the paneling was left standing perpendicular to the floor or even nearly so. The trial judge’s reasons for judgment err in finding “a slight, if any, angle to the wall.” (Our emphasis.)
If the 4' edge of the paneling formed a 10 to 20° angle with the wall studs, the bottom of the paneling would have been 8.3 to 16.4[1] inches away from the wall at the *485 floor. For the paneling to fall over from the top (not slide out from the bottom), it would have to be pulled out from the wall at the top (as one might do to secure a plastic tablecloth between paneling and studs, to prevent its sliding off the top of the paneling), or pushed in at the bottom (as one might accidentally do by pressing one’s foot against the bottom). If the angle were 10° or more, the top would have to be pulled out 8.3 inches to make the paneling perpendicular to the floor, plus a further fraction of an inch to make it fall over. If the angle were less than 10°, the distance would be shorter: but only if the angle were nearly zero could the fall be explained by, say, vibrations from a passing truck rather than direct human intervention.
Because there was an angle between paneling and wall, of size significant enough to be estimated at 10 to 20° by plaintiff (although we recognize that one cannot be held to mathematical precision), the only rational explanation for the paneling’s falling over (again we note: not sliding out) is that plaintiff himself either pulled it out at the top or pushed it in at the bottom. Plaintiff’s testimony that he did not touch the paneling may mean only that he was unaware of doing so; but he may have pulled on it by the plastic cloth’s catching a top corner, or he may have pushed on its bottom with his feet while attempting to tuck the plastic behind the paneling in the spaces between studs (as he says he did, rather than touch the paneling). There is, in any case, one thing that cannot have happened: the paneling did not lift itself up into a perpendicular position from which it then fell upon plaintiff.
The fact that the paneling did not fall over during the long period of time from delivery until plaintiff’s accident also militates strongly against any supposition that the paneling was left teetering at some angle so tiny as to be insignificant, giving further support to the conclusion that plaintiff himself somehow, even if unknowingly, caused the paneling to fall over.
opposite the top angle) divided by the 4' paneling side of the triangle (the hypotenuse). Thus 4' times the sine would give the floor side of the triangle (in feet). If the top angle is 10°, the sine is .1736, times 4 is .6944 feet or 8.3 inches. If the angle is 20°, the sine is .3420, times 4 is 1.368 feet or 16.4 inches.
The argument (referred to by the trial judge) that the deliveryman should have used chocks where the paneling stood on the floor is not supportive of the trial judge’s conclusion on our undisputed facts. Chocks would prevent the paneling from sliding out at the bottom, but not from being pulled over at the top. Failure to place chocks was thus not a cause-in-fact of plaintiff’s accident.
Nor does the fact that the deliveryman refused to stand the panels on end make defendant liable. The deliveryman cannot be said to be obliged to so stand the panels as to damage them; indeed, had he done so plaintiff might be suing for the price of new, unbowed paneling, arguing that the deliveryman should have known better. Not standing the panels on end could be called a cause-in-fact, but the deliveryman had no duty to stand them on end.
The critical question is whether the deliveryman had an obligation to plaintiff not to place the paneling as he did, namely on its side at an angle such that the paneling could be pulled over on someone trying to protect it from rain by covering it with a plastic tablecloth.
We first observe that there is no expert testimony on what angle is appropriate for a placement of paneling. There are two obvious extremes. On the one hand, a placement perpendicular to the floor poses an obvious danger of falling over upon someone, and a deliveryman therefore has an obligation not to so place the paneling. On the other hand, placement at too large an angle with the wall poses an obvious danger of sliding out at the bottom, and a deliveryman has an obligation to avoid creating that danger. In addition to the obligation not to leave paneling so precariously standing that it might fall over by itself from the normal vibrations from passing *486 traffic or the like, a deliveryman could be said to have the obligation not to lean paneling against a wall at an angle so nearly perpendicular that even a casual touch might cause it to fall over. But the record does not support a factual conclusion that this paneling was stood nearly perpendicular. The deliveryman had no obligation not to place the paneling as he did here, at an angle in the range of 10° or so, and his placing it as he did breached no duty towards plaintiff.
Reversed at plaintiff’s cost.

. In the right triangle formed by wall, floor and side edge of paneling, the sine of the angle at the top (between wall and paneling) would equal the floor side of the triangle (the side